**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| KENNETH MARTIN, MYRA MARTIN, DAVID GOODWINE, CATHERINE GOODWINE, TERRY ALLEN, AMANDA ALLEN, JEFFREY REID, and TAWANNA REID, *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> vs. <br><br> JTH TAX, INC., d/b/a LIBERTY TAX SERVICE, JOHN HEWITT, and DANNY HEWITT, <br><br> Defendants. | No. 9:10-cv-03016-DCN <br><br><br><br><br><br> **ORDER** |
| JTH TAX, INC., d/b/a LIBERTY TAX SERVICE, <br><br> Third Party Plaintiff, <br><br> vs. <br><br> ANNIE FULLER, <br><br> Third Party Defendant. | |

This matter is before the court on a motion for class certification brought by plaintiffs, who allege that they have suffered economic harm as a result of an unlawful scheme employed by defendants to defraud federal and state governments. Because the putative class members cannot be seen to have suffered a common injury, and because individual issues predominate over class questions, the court denies plaintiffs' motion.

1

## I. BACKGROUND

Plaintiffs filed this action in federal court on November 22, 2010 against defendants JTH Tax, Inc., d/b/a Liberty Tax Service (Liberty Tax), John Hewitt, and Danny Hewitt. Liberty Tax answered the complaint on January 3, 2011 and filed a third party complaint against Annie Fuller, a former Liberty Tax franchisee. On February 21, 2011, John and Danny Hewitt (the Hewitts) individually filed motions to dismiss, which were denied on July 14, 2011. The Hewitts answered the complaint on July 27, 2011.

On May 15, 2012, plaintiffs filed a motion for class certification. Defendants filed a motion for summary judgment and a motion to exclude plaintiff's expert on June 15, 2012. The court held a hearing on the motion for summary judgment on October 25, 2012. In addition, the court heard argument on defendants' motion to strike on December 5, 2012. The court held a hearing on plaintiffs' motion for class certification on January 23, 2013.

In their complaint, plaintiffs allege that defendants concocted a scheme to defraud federal and state taxing authorities by soliciting and/or submitting false information on tax returns in order to increase profits. In essence, plaintiffs state that Liberty Tax franchisees and their employees were taught to sell unnecessary forms and schedules when completing tax returns so that the franchisees could charge greater fees, on a per-form basis, to the customers. In turn, the customers would receive a greater tax refund, out of which the franchisee's fees were paid. Ultimately, many of the customers were audited and incurred additional tax liability, interest, and penalties. Plaintiffs bring claims against Liberty Tax for breach of contract, breach of fiduciary duty, and unjust enrichment, and against John and Danny Hewitt for RICO violations and unjust

enrichment. Plaintiffs further seek to represent a class consisting of all customers for whom a South Carolina Liberty Tax franchisee prepared a tax return and were charged additional fees for the preparation of schedules or forms that accompanied the basic filing forms.

Plaintiffs allege they are South Carolina residents who employed a South Carolina franchise of Liberty Tax to prepare and file federal and state income tax returns in South Carolina. Compl. ¶¶ 1-4. Liberty Tax is incorporated in Delaware, has its principal place of business in Virginia, Defs.' Answer ¶ 135, and is engaged in the operation of franchises that prepare personal income tax returns, facilitate refund anticipation loans, and conduct other tax services across the United States and Canada. Compl. ¶ 5. John Hewitt is the President, CEO, and sole founder of Liberty Tax, and his son, Danny Hewitt, is the Vice President and Director of Guerilla Marketing. Id. ¶¶ 6-7. The Hewitts are residents of Virginia. Id. Liberty Tax franchisees operate more than 3,000 offices in the United States, including at least seventy in South Carolina. Id. ¶ 5. Franchisees act as agents of Liberty Tax for the purpose of preparing tax returns. Id.

Third party defendant Annie Fuller was a franchisee who opened the Newberry, South Carolina office of Liberty Tax in either 2006 or 2007. Id. ¶ 56; Defs.' Answer ¶ 140. During her first year, Fuller set the company record for tax returns filed. Compl. ¶ 56. As a result of her success, Fuller was engaged by Liberty Tax to begin working on a national scale by providing training seminars to other franchisees, explaining marketing techniques, and revising the Liberty Tax operations manual. Id. ¶¶ 57-58. In the meantime, Fuller allegedly developed a close relationship with the Hewitts, appearing

with them in national promotional events and conducting training sessions referred to as the "Danny and Annie Marketing and Sales Show."  Id. ¶¶ 60-61.

In 2009, plaintiffs Kenneth and Myra Martin sued Liberty Tax and Annie Fuller in the South Carolina Court of Common Pleas for Newberry County.  Id. ¶ 55.  The Martins complained that their tax returns had been prepared improperly at the Newberry franchise of Liberty Tax and essentially alleged the same fraudulent scheme as that asserted in this case.  See id. ¶ 63.  According to the complaint in this case, Liberty Tax refused to defend Fuller in state court, instead portraying her as a "rogue franchisee" and ultimately terminating her franchise agreements.  Id. ¶¶ 64-65.  During the state court litigation, Fuller's attorney withdrew for nonpayment.  See Defs.' Mem. Supp. Mot. Summ. J. 3.  According to defendants, Fuller made a deal with plaintiffs' counsel to provide a recorded statement regarding the Liberty Tax franchise system so long as the state court claims against her would be dismissed with prejudice.  Id. at 3-4.

Plaintiffs allege that in her recorded statements, Fuller admitted she, at the direction of the Hewitts, trained franchisees on methods of increasing the cost of tax returns and the amounts of refunds due to customers by decreasing the customers' tax liability through the preparing and filing of false and fraudulent forms and schedules claiming improper deductions and/or credits.[1]  The Hewitts allegedly paid Fuller to give seminars on how to "close the sale," i.e., convince customers that multiple forms were needed in order to complete the tax returns.  See Compl. ¶ 76.  For example, Fuller would explain how asking leading questions, "digging deep," and "never taking no for an

---

[1] Defendants deny that Fuller's interview provides a sufficient basis for any of plaintiffs' claims, arguing that "nowhere in the interview does Fuller state that there was any unified system-wide scheme to submit fraudulent returns." Def.'s Mem. Supp. Mot. Summ. J. 4.

4

answer" would elicit information from customers regarding the amount of "qualifying children" they had for purposes of an earned income tax credit. Id. ¶¶ 77-78.[2] Similarly, Fuller would allegedly "suggest that watching another person's child or braiding a friend's hair qualifies as a business, generating business income to be reported . . . [and] increasing the amount of earned income tax credit along with the number of forms and schedules used in the tax return." Id. ¶ 78. Plaintiffs further claim that John Hewitt would teach the tax preparers not to be concerned about the truthfulness of information given by customers, stating, "that's between them, God and the IRS if they're telling the truth." Id. ¶ 82. To evade scrutiny by banks and federal and state tax authorities, Fuller, at the direction of the Hewitts, would allegedly train franchisees to artificially lower the average cost of tax returns by falsely reporting free returns into the Liberty Tax computer system. See id. ¶ 72. Plaintiffs claim that many of Fuller's unlawful tactics were articulated in an email sent to Danny Hewitt and others on December 28, 2009. See Pls.' Mem. Opp. Defs.' Mot. Summ. J. Ex. 1.

The named plaintiffs in this case allege that they filed tax returns though Liberty Tax in South Carolina and were subjected to the unlawful scheme taught by Fuller at the direction of the Hewitts. The allegations in the complaint are separated as they pertain to the individual sets of proposed class representatives as follows:

**A. The Martins**

Kenneth and Myra Martin employed the Newberry, South Carolina Liberty Tax office in February 2008 to prepare their 2006-2007 federal and state tax returns. Id. ¶ 26.

---

[2] In their motion for class certification, Plaintiffs state that "one of the most egregious yet profitable fraudulent schemes that [Fuller] taught, with the full knowledge and assent of JOHN HEWITT and DANNY HEWITT, involved the filing for earned income tax credits." Pls.' Mem. Supp. Mot. Class Certification 6.

5

Liberty Tax gave an "Accuracy Guarantee" to provide the most accurate return and largest possible refund and to pay any penalty or interest resulting from an error in preparation.  Id. ¶ 27.  The Martins allege that Liberty Tax agents improperly solicited information regarding business expenses that were inflated or not actually deductible and otherwise reported false information to taxing authorities in an attempt to fraudulently reduce the Martins' tax liability so they would be satisfied with their return and come back for future tax filings.  See id. ¶ 28.  The Martins were audited by the South Carolina Department of Revenue.  Id. ¶ 29.  They claim that Liberty Tax failed to defend or pay money towards the costs of defending the audit in breach of the Liberty Tax Accuracy Guarantee.  Id. ¶ 34.

### B. The Goodwines

In April 2008, David and Catherine Goodwine employed the Broad River Road, Columbia, South Carolina Liberty Tax office to prepare their 2007 federal and state tax returns.  Id. ¶ 35.  In furtherance of the alleged unlawful scheme, the Goodwines claim that Liberty Tax agents inappropriately solicited information regarding mileage expenses to deduct as business expenses.  Id. ¶ 37.  The Goodwines were audited by the South Carolina Department of Revenue and the invalid business deductions were disallowed.  Id. ¶ 40.  Although the Goodwines originally received a South Carolina refund of $1,768, they eventually had to pay $2,368 in back taxes, penalties, and interest.  Id.  Moreover, the Goodwines were audited by the IRS.  While they initially received a federal refund of $2,230, they ultimately were ordered to pay $5,117 in back taxes, penalties, and interest.  Id. ¶ 41.  According to the Goodwines, Liberty Tax failed to defend them or reimburse these payments in breach of the Accuracy Guarantee.  Id. ¶ 42.

### C. The Allens

In April 2008, Terry and Amanda Allen employed the Broad River Road, Columbia, South Carolina office of Liberty Tax to prepare their 2007 federal and state tax returns.  Id. ¶ 43.  According to the Allens, Liberty Tax improperly submitted a business mileage deduction to the IRS and claimed other inappropriate deductions.  Id. ¶ 45.  After receiving a refund of $1,161, the Allens were audited by the IRS, which disallowed the invalid business deductions and ordered the Allens to repay $1,662 in back taxes, penalties, and interest.  Id. ¶ 47.  The Allens contend that Liberty Tax failed to defend them or reimburse their payments in breach of the Accuracy Guarantee.  Id. ¶ 48.

### D. The Reids

Jeffrey and Tawanna Reid employed the Broad River Road, Columbia, South Carolina office of Liberty Tax to prepare their 2006-2008 federal and state tax returns.  Id. ¶ 49.  The Reids allege that Liberty Tax filed federal and state tax returns containing deductions for business mileage that were actually non-deductible.  Id. ¶ 51.  Despite receiving a refund of $17,833, the Reids were audited by the IRS, which disallowed the invalid business deductions and ordered the Reids to repay $2,400 in back taxes, penalties, and interest.  Id. ¶ 53.  According to the Reids, Liberty Tax failed to defend them or reimburse their payments in breach of the Accuracy Guarantee.  Id. ¶ 54.

## II.  STANDARD

Class certification is governed by Federal Rule of Civil Procedure 23.  In appropriate circumstances, class actions promote efficiency and economy in litigation and permit multiple parties to litigate claims that might otherwise be uneconomical to

pursue individually.  See Califano v. Yamasaki, 442 U.S. 682, 701 (1979) (noting that class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and "turn on questions of law applicable in the same manner to each member of the class").

Rule 23(a) provides that one or more members of a class may sue as representative parties on behalf of others only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Further, to be certified, a proposed class must satisfy one of the three sub-parts of Rule 23(b), as follows:  (1) individual actions would risk inconsistent adjudications with respect to individual class members or adjudications dispositive of the interests of non-parties; (2) class-wide injunctive/declaratory relief is sought and appropriate; or (3) questions of fact or law common to the class predominate over any questions affecting individual members.  See Fed. R. Civ. P. 23(b); Gunnells v. Healthplan Servs., 348 F.3d 417, 423 (4th Cir. 2003).

The party seeking class certification bears the burden of establishing that each of the requirements for a class action is satisfied.  Gariety v. Grant Thornton, LLP, 368 F.3d 356, 362 (4th Cir. 2004); Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001).

### III.   DISCUSSION

Plaintiffs set forth their primary theory of liability in this case as follows:

> At its core, the LIBERTY TAX SYSTEM is designed to increase revenues to LIBERTY TAX, JOHN HEWITT, DANNY HEWITT, [and] LIBERTY TAX's franchisees and to increase the amount of refund to customers by decreasing the customers' tax liability through the preparation of and filing of false and fraudulent forms and schedules claiming improper

> deductions and/or credits at the expense of the federal and State governments. The fees charged by LIBERTY TAX and its franchisees are based upon the number of schedules and forms that are included with the basic Form 1040, 1040A or 1040EZ tax return, with separate charges being levied for each individual form.

Pls.' Mem. Supp. Mot. Class Certification 4-5. In addition, plaintiffs claim that "[d]iscovery has also revealed that the method by which LIBERTY TAX and its franchisees charge fees to customers violates the IRS rules and is an unlawful practice." Id. at 8.[3]

Based on these theories of liability, plaintiffs seek to represent a class consisting of

> all persons and entities ("customers") for whom LIBERTY TAX or one of its franchisees prepared and filed a federal tax return Form 1040, 1040A or 1040EZ with the Internal Revenue Service (IRS) and the customer was charged additional fees for the preparation of schedules or forms which accompanied the Form 1040, 1040A or 1040EZ filing, but the Class shall not include LIBERTY TAX, any officer, agent or employee of LIBERTY TAX, any franchisee of LIBERTY TAX or their officers, agents or employees, or any individually named DEFENDANT.

Compl. ¶ 15. This putative class is "limited to South Carolina customers." Pls.' Mem. Supp. Mot. Class Certification 2 n.1.

Plaintiffs move for certification of the above class under Rule 23(a) and Rule 23(b)(3). Defendants counter that the motion should be denied because plaintiffs fail to satisfy each requirement of Rule 23. The court will focus on the issues of commonality under Rule 23(a)(2) and predominance under Rule 23(b)(3) because they are dispositive of the question of class certification.

---

[3] Under this theory, Plaintiffs allege that "the LIBERTY TAX scheme whereby its franchisees are trained to sell and charge for tax forms, using only those forms that result in a lower tax liability and often greater refund is an unlawful fee under Circular 230," which prohibits charging for tax returns on a contingency fee basis. Pls.' Mem. Supp. Mot. Class Certification 15.

### A. Commonality Under Rule 23(a)(2)

Rule 23(a)(2) requires plaintiffs to show that "there are questions of law or fact common to the class." In June 2011, the Supreme Court expounded on the commonality requirement in <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541 (2011). In that case, the Court decided that a putative class encompassing 1.5 million current and former employees of Wal-Mart that were allegedly subjected to sex-based discrimination did not satisfy the commonality requirement of Rule 23(a)(2). In its interpretation of the commonality requirement, which was the "crux of th[e] case," <u>id.</u> at 2510, the Court made two important holdings. First, the Court reaffirmed its previous holding in <u>General Telephone Co. of the Southwest v. Falcon</u>, 457 U.S. 147 (1982), that under Rule 23(a), "certification is proper only if 'the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied.'" <u>Wal-Mart</u>, 131 S. Ct. at 2251 (quoting <u>Falcon</u>, 457 U.S. at 161) (emphasis added). The district court's "rigorous analysis" will often require determinations that overlap with the merits of the case, which "cannot be helped." <u>Id.</u> Second, the Court clarified that under Rule 23(a)(2), commonality is not satisfied by simply raising common questions, but instead showing that "the class members '*have suffered the same injury*.'" <u>Id.</u> (quoting <u>Falcon</u>, 457 U.S. at 157) (emphasis added). The Court wrote, "Th[e] language [of Rule 23(a)(2)] is easy to misread, since [a]ny competently crafted class complaint literally raises common 'questions.' . . . The[] claims must depend upon a common contention . . . [that] must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Id.</u>

In this case, an essential element of each cause of action asserted is that the potential class members suffered an injury.  See Compl. ¶¶ 95, 100-01, 105, 109-10.  But under Wal-Mart, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  131 S. Ct. at 2251 (quoting Falcon, 457 U.S. at 157).  In the instant case, because of the varying factual scenarios between putative class members, there are a wide variety of possible injuries—including no injury at all— caused by the alleged unlawful scheme employed by defendants.  Thus, the requisite fact-intensive inquiries about the alleged injuries create onerous administrative burdens and render class treatment inappropriate.

The most obvious problem results from plaintiffs' theory that defendants encouraged franchisees to use improper or superfluous forms when preparing tax returns. Plaintiffs do not argue that the same number of forms was used by each tax preparer; instead, the tax preparers allegedly would sell varying numbers/types of forms to customers depending on information provided by or solicited from the customer. Necessarily, some customers will have received a tax refund based on preparation by a Liberty Tax employee who used the same forms in kind and number that would have been used absent any fraudulent scheme.  In such a case, there would be no injury. However, plaintiffs' theory of liability assumes that each customer in the proposed class was sold "*false and fraudulent* forms and schedules claiming improper deductions and/or credits."[4]  Pls.' Mem. Supp. Mot. Class Certification 4-5 (emphasis added).  Plaintiffs admit that some class members will have had their taxes done correctly.  This alone

---

[4] The court would note that the forms themselves could not be "false and fraudulent"; only after information allegedly solicited by defendants from plaintiffs was placed on these forms could they be "false and fraudulent."  See infra note 5.

shows that the putative class members have not suffered the "same injury" and that commonality is not satisfied.

Other customers, if plaintiffs' theories of liability are proven, will have paid for forms they did not need. But even for this latter group, the court would have to determine on an individualized basis the amount of damages due a class member who paid for more forms than another class member. Plaintiffs admit that the amounts charged by a franchisee and his or her agents on any given tax return varied from office to office and that this decision was often left to the discretion of the particular preparer or franchisee. See Grabert Dep. 186:25, 187:2 ("Every customer is different"; "Every situation is different"). Such "[d]issimilarities within the proposed class . . . have the potential to impede the generation of common answers." Wal-Mart, 131 S. Ct. at 2251.

To decide whether a class member has a claim against defendants, it would need to be determined, for example, whether each individual class member was actually entitled to an exemption and had their taxes done correctly; whether each class member was solicited to provide false information that would artificially inflate their tax return and/or reduce their tax liability; whether the use of additional forms or schedules resulted in more or less tax liability for each class member; whether each class member was audited as a result of a Liberty Tax preparer filing inappropriate deductions; and whether each class member was subjected to the "hard sell" tactics allegedly taught by Annie Fuller at the behest of the Hewitts. Under the "rigorous analysis" required by Wal-Mart, id., the court cannot conclude that plaintiffs have shown that the fraudulent scheme allegedly established by defendants was put in action at every office and by every tax preparer in South Carolina in the same or similar fashion.

What makes matters worse is that each of the four groups of class representatives alleges varying factual experiences with Liberty Tax:  they had their taxes done at two different Liberty Tax locations, submitted tax information for different years of income, paid for differing numbers of forms or schedules, claimed different deductions, and had different auditing experiences in terms of deductions being allowed or disallowed.  In no way could the named plaintiffs be said to present "common" questions for the court to resolve.  Instead, a fact-intensive analysis must be made into each class representative's alleged injury.  This laborious analysis would only be multiplied at the class action level.  Cf. Espenscheid v. DirectSat USA, LLC, --- F.3d ----, 2013 WL 407446, at *5 (7th Cir. Feb. 4, 2013) (Posner, J.) (noting the impracticality of class treatment when individual damage calculations must be made, especially when class members are "each harmed to a different extent (and many not harmed at all)"); Solo v. Bausch & Lomb Inc., No. 06-77777, 2009 WL 4287706, at *6 (D.S.C. Sept. 25, 2009) ("In order to ascertan who falls within the class, the court would have to make thousands of fact-intensive inquiries."). Although the named plaintiffs are required to be representative of the putative class, none of them are alleged to have applied for earned income tax credits—which plaintiffs nevertheless claim was one of defendants' "most egregious yet profitable fraudulent schemes," Pls.' Mem. Supp. Mot. Class Certification 6—and neither had any of them received refund anticipation loans.  Overall, the individual discrepancies negate plaintiffs' ability to demonstrate not just commonality but also typicality.  See Wal-Mart, 131 S. Ct at 2551 n.5 (noting that the commonality and typicality requirements of Rule 23(a) "'tend to merge'" (quoting Falcon, 457 U.S. at 157-58)); Falcon, 457 U.S. at 156 ("We have repeatedly held that a class representative must be a part of the class and

possess the same interest and suffer the same injury as the class members." (internal quotation marks omitted)).[5]

Finally, plaintiffs espouse a "contingency fee" theory, contending that each putative class member suffered the same injury because each had to pay the same illegal fee. See Pls.' Reply Supp. Mot. Class Certification 6 ("[T]he fact that some class members may have had their returns prepared correctly is not material to the Plaintiffs['] claim of damages. Irrespective of the accuracy of the return, all Plaintiffs and all Class Members were charged the same illegal fee."). Plaintiffs' primary theory of liability has been a moving target. By their own admission, the complaint "does not allege an implied cause of action under the IRS Regulations." Id. at 2. Nor have plaintiffs asserted a claim for rescission under South Carolina law. At any rate, even assuming this theory were properly raised and formed a basis of liability, it would still require the court to engage in a case-by-case analysis of the precise fee that was paid by each proposed class member to determine damages.[6]

---

[5] In addition, if the class were certified, the court would be required to determine whether each class member is subject to an *in pari delicto* defense by defendants. In Wooley v. Jackson Hewitt, Inc., No. 07-2201, 2011 WL 1559330 (N.D. Ill. Apr. 25, 2011), the plaintiffs sued Jackson Hewitt for breach of contract based on alleged breaches of Jackson Hewitt's "Basic Guarantee." There was evidence submitted to the court that the putative class members had given suspicious or fraudulent information to the tax preparers, who had turned a blind eye to the information. The district court denied class certification in part because "numerous class members still would be subject to an in pari delicto defense": "That defense turns on questions of individual responsibility that cannot be resolved on a classwide basis and that would overwhelm any efficiencies gained by trying common issues in a class proceeding." Id. at *11. Here, while defendants do not specifically assert an *in pari delicto* defense, they do raise the affirmative defense of unclean hands. See Defs.' Answer ¶ 132.

[6] In making this determination, the court would also have to consider the effect of the United States District Court for the District of District of Columbia's recent decision in Loving v. IRS, --- F. Supp. 2d ----, 2013 WL 204667 (D.D.C. Jan. 18, 2013), which held that the IRS lacks statutory authority to extend the reach of Circular 230 to tax-return preparers.

For the above reasons, the commonality requirement is not satisfied. It is abundantly clear that the administrative burdens of certification greatly outweigh any efficiencies gained by elevating plaintiffs' claims to class status. Thus, class certification is not appropriate. See Boley v. Brown, 10 F.3d 218, 223 (4th Cir. 1993) (holding that class certification was properly denied where any resultant harm was dependent upon consideration of unique circumstances pertinent to each class member); Windham v. Am. Brands, Inc., 565 F.2d 59, 68 (4th Cir. 1977) ("[W]here the issue of damages and impact does not lend itself to . . . a mechanical calculation, but requires separate mini-trials of . . . individual claims, . . . the case [is] unmanageable as a class action.").

### B. Predominance Under Rule 23(b)(3)

Class certification must also be denied because plaintiffs cannot meet the predominance requirement under Rule 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods. v. Windsor, 521 US. 591, 623 (1997). The predominance requirement is "far more stringent than the commonality requirement of Rule 23(a)." Lott v. Westinghouse Savannah River Co., 200 F.R.D. 539, 563 (D.S.C. 2000) (citing Amchem Prods., 521 U.S. at 623-24). "[I]ndividualized damage determinations cut against class certification under Rule 23(b)(3)." Ward v. Dixie Nat'l Life Ins. Co., 595 F.3d 164, 180 (4th Cir. 2010).

Based on the individualized determinations that will be required, the proposed class is not sufficiently cohesive to warrant class adjudication by representation and thus, plaintiffs fail to meet the predominance requirement of Rule 23(b)(3). See In re Wilborn, 609 F.3d 748, 755 (5th Cir. 2010) ("Plaintiffs' claims here fail under the predominance

15

and superiority inquiries because individual issues for each class member, particularly with respect to damages, override class concerns when we consider how the case must be tried."); Weiss v. La Suisse, Societe D'Assurrances Sur La Vie, 226 F.R.D.446, 452 (S.D.N.Y. 2005) ("Because members of the proposed class allege that their insurance policies were breached in a 'variety of ways,' each type of breach would require a different factual showing.").

## IV.   CONCLUSION

Based on the foregoing, the court **DENIES** plaintiff's motion for class certification.[7]

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 5, 2013**
**Charleston, South Carolina**

---

[7] Currently pending before the court are a motion for summary judgment and motion to exclude plaintiffs' expert Mary Fouts. See Docket Nos. 48, 50. For purposes of deciding the motion for class certification, the court takes no position on Ms. Fouts' report and testimony because individual issues predominate, which bars class certification, and her testimony is therefore not critical to the motion. See Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 812 (7th Cir. 2012) (holding that a district court "must make a conclusive ruling on any challenge to an expert's qualifications or submissions before it may rule on a motion for class certification" only when the "expert's report or testimony is 'critical to class certification'" (quoting Am. Honda Motor Co. v. Allen, 600 F.3d 813, 815-16 (7th Cir. 2010)).

16