**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| KENNETH MARTIN, MYRA MARTIN, DAVID GOODWINE, CATHERINE GOODWINE, TERRY ALLEN, AMANDA ALLEN, JEFFREY REID, and TAWANNA REID, | ) ) ) ) ) ) | No. 9:10-cv-03016-DCN |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| JTH TAX, INC., d/b/a LIBERTY TAX SERVICE, JOHN HEWITT, and DANNY HEWITT, | ) ) ) ) | **ORDER** |
| Defendants. | ) ) ) | |
| JTH TAX, INC., d/b/a LIBERTY TAX SERVICE, | ) ) ) | |
| Third Party Plaintiff, | ) ) | |
| vs. | ) ) | |
| ANNIE FULLER, | ) ) | |
| Third Party Defendant. | ) ) ) | |

This matter is before the court on a motion for summary judgment brought by defendants John and Danny Hewitt. Plaintiffs allege they suffered economic harm as a result of an unlawful scheme employed by defendants to defraud federal and state taxing authorities by submitting false and fraudulent tax returns, which led to audits, additional tax liability, penalties, and interest. For the reasons set forth below, the court grants in part and denies in part the motion for summary judgment.

1

## I.  BACKGROUND

Plaintiffs filed this action in federal court on November 22, 2010 against defendants JTH Tax, Inc., d/b/a Liberty Tax Service (Liberty Tax), John Hewitt, and Danny Hewitt.  Liberty Tax answered the complaint on January 3, 2011 and filed a third party complaint against Annie Fuller, a former Liberty Tax franchisee.  On February 21, 2011, John and Danny Hewitt (the Hewitts) individually filed motions to dismiss, which were denied on July 14, 2011.  The Hewitts answered the complaint on July 27, 2011.

On May 15, 2012, plaintiffs filed a motion for class certification.  On June 15, 2012, the Hewitts filed a motion for summary judgment and all defendants filed a motion to exclude an expert report and testimony.  The court held separate hearings on the three motions.  On February 5, 2013, the court denied the motion for class certification.

Plaintiffs complain that the Hewitts taught Liberty Tax franchisees and their employees to sell unnecessary forms and schedules when completing tax returns so that the franchisees could charge greater fees, on a per-form basis, to the customers.  In turn, the customers would receive a greater tax refund, out of which the franchisee's fees were paid.  Ultimately, many of the customers were audited and incurred additional tax liability, interest, and penalties.  Plaintiffs assert causes of action for violation of RICO (against the Hewitts), breach of contract (against Liberty Tax), breach of fiduciary duties (against Liberty Tax), and unjust enrichment (against all defendants).

According to the complaint, Liberty Tax is engaged in the operation of franchises that prepare personal income tax returns, facilitate refund anticipation loans, and conduct other tax services across the United States and Canada.  Id. ¶ 5. John Hewitt is the President, CEO, and sole founder of Liberty Tax, and his son, Danny Hewitt, is the Vice

President and Director of Guerilla Marketing.  Id. ¶¶ 6-7.  Liberty Tax franchisees operate more than 3,000 offices in the United States, including at least seventy in South Carolina.  Id. ¶ 5.  Franchisees act as agents of Liberty Tax for the purpose of preparing tax returns.  Id.

Third party defendant Annie Fuller was a franchisee who opened the Newberry, South Carolina office of Liberty Tax in either 2006 or 2007.  Id. ¶ 56; Defs.' Answer ¶ 140.  During her first year, Fuller set the company record for tax returns filed.  Compl. ¶ 56.  As a result of her success, Fuller was engaged by Liberty Tax to begin working on a national scale by providing training seminars to other franchisees, explaining marketing techniques, and revising the Liberty Tax operations manual.  Id. ¶¶ 57-58.  In the meantime, Fuller allegedly developed a close relationship with the Hewitts, appearing with them in national promotional events and training sessions.  Id. ¶¶ 60-61.

In 2009, plaintiffs Kenneth and Myra Martin sued Liberty Tax and Annie Fuller in the South Carolina Court of Common Pleas for Newberry County.  Id. ¶ 55.  The Martins complained that their tax returns had been prepared improperly at the Newberry franchise of Liberty Tax and essentially alleged the same fraudulent scheme as that asserted in this case.  See id. ¶ 63.  According to the complaint in this case, Liberty Tax refused to defend Fuller in state court, instead portraying her as a "rogue franchisee" and ultimately terminating her franchise agreements.  Id. ¶¶ 64-65.  During the state court litigation, Fuller's attorney withdrew for nonpayment.  See Defs.' Mem. Supp. Mot. Summ. J. 3.  Defendants claim that Fuller made a deal with plaintiffs' counsel to provide recorded statements regarding the Liberty Tax franchise system so long as the state court claims against her would be dismissed with prejudice.  Id. at 3-4.

Plaintiffs allege that in her recorded statements, Fuller admitted she, at the direction of the Hewitts, taught improper tax preparation methods at her seminars. Specifically, Fuller would allegedly teach franchisees how to increase the cost of tax returns and the amount of refunds due to customers by decreasing the customers' tax liability through the preparing and filing of false and fraudulent forms and schedules claiming improper deductions and/or credits. The Hewitts paid Fuller to give seminars on how to "close the sale," i.e., convince customers that multiple forms were needed in order to complete tax returns. See Compl. ¶ 76. For example, Fuller would explain how asking leading questions, "digging deep," and "never taking no for an answer" would elicit information from customers regarding the amount of "qualifying children" they had for purposes of an earned income tax credit. Id. ¶¶ 77-78. Plaintiffs further claim that John Hewitt would teach the tax preparers not to be concerned about the truthfulness of information given by customers, stating, "that's between them, God and the IRS if they're telling the truth." Id. ¶ 82. To evade scrutiny by banks and federal and state taxing authorities, Fuller, at the direction of the Hewitts, would allegedly train franchisees to artificially lower the average cost of returns by falsely reporting free returns into the Liberty Tax computer system. See id. ¶ 72.

The named plaintiffs allege they are South Carolina residents who employed a South Carolina franchise of Liberty Tax to prepare and file federal and state income tax returns in South Carolina. Compl. ¶¶ 1-4. They further allege that they were subjected to the unlawful scheme taught by Fuller at the direction of the Hewitts. The allegations in the complaint are separated as they pertain to the individual sets of plaintiffs as follows:

### A. The Martins

Kenneth and Myra Martin employed the Newberry, South Carolina Liberty Tax office in February 2008 to prepare their 2006-2007 federal and state tax returns.  Id. ¶ 26.  Liberty Tax gave an "Accuracy Guarantee" to provide the most accurate return and largest possible refund and to pay any penalty or interest resulting from an error in preparation.  Id. ¶ 27.  The Martins allege that Liberty Tax agents improperly solicited information regarding business expenses that were inflated or not actually deductible and otherwise reported false information to taxing authorities in an attempt to fraudulently reduce the Martins' tax liability so they would be satisfied with their return and come back for future tax filings.  See id. ¶ 28.  The Martins were audited by the South Carolina Department of Revenue.  Id. ¶ 29.  They claim that Liberty Tax failed to defend or pay money towards the costs of defending the audit in breach of the Accuracy Guarantee.  Id. ¶ 34.

### B. The Goodwines

In April 2008, David and Catherine Goodwine employed the Broad River Road, Columbia, South Carolina Liberty Tax office to prepare their 2007 federal and state tax returns.  Id. ¶ 35.  In furtherance of the alleged unlawful scheme, the Goodwines claim that Liberty Tax agents inappropriately solicited information regarding mileage payments to deduct as business expenses.  Id. ¶ 37.  The Goodwines were audited by the South Carolina Department of Revenue and the invalid business deductions were disallowed.  Id. ¶ 40.  Although the Goodwines originally received a South Carolina refund of $1,768, they eventually had to pay $2,368 in back taxes, penalties, and interest.  Id.  Moreover, the Goodwines were audited by the IRS.  While they initially received a federal refund of

$2,230, they ultimately were ordered to pay $5,117 in back taxes, penalties, and interest. Id. ¶ 41. According to the Goodwines, Liberty Tax failed to defend them or reimburse these payments in breach of the Accuracy Guarantee. Id. ¶ 42.

### C. The Allens

In April 2008, Terry and Amanda Allen employed the Broad River Road, Columbia, South Carolina office of Liberty Tax to prepare their 2007 federal and state tax returns. Id. ¶ 43. According to the Allens, Liberty Tax improperly submitted a business mileage deduction to the IRS and claimed other inappropriate deductions. Id. ¶ 45. After receiving a federal refund of $1,161, the Allens were audited by the IRS, which disallowed the invalid business deductions and ordered the Allens to repay $1,662 in back taxes, penalties, and interest. Id. ¶ 47. The Allens contend that Liberty Tax failed to defend them or reimburse their payments in breach of the Accuracy Guarantee. Id. ¶ 48.

### D. The Reids

Jeffrey and Tawanna Reid employed the Broad River Road, Columbia, South Carolina office of Liberty Tax to prepare their 2006-2008 federal and state tax returns. Id. ¶ 49. The Reids allege that Liberty Tax filed returns containing deductions for business mileage that were actually non-deductible. Id. ¶ 51. Despite receiving a refund of $17,833, the Reids were audited by the IRS, which disallowed the invalid business deductions and ordered the Reids to repay $2,400 in back taxes, penalties, and interest. Id. ¶ 53. According to the Reids, Liberty Tax failed to defend them or reimburse their payments in breach of the Accuracy Guarantee. Id. ¶ 54.

## II.  STANDARD

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

## III.   DISCUSSION

Defendants John and Danny Hewitt move for summary judgment on the RICO and unjust enrichment claims asserted against them, arguing that "after 19 months of discovery, including 25 depositions and the production of over 175,000 pages of documents, the Plaintiffs still only have the transcript of the recording of the unsworn Fuller interview to support the allegations of a unified system-wide scheme."  Defs.' Mem. Supp. Mot. Summ. J. 6.

**A.  RICO**

The Racketeer Influenced and Corrupt Organizations Act (RICO), codified at 18 U.S.C. §§ 1961 et seq., establishes civil and criminal liability for those who engage in "a pattern of racketeering activity."  18 U.S.C. § 1962.  Plaintiffs assert claims under 18 U.S.C. §§ 1962(c) and (d).  Specifically, plaintiffs allege that the Hewitts "did cause to be transmitted in interstate wires false and fraudulent United States tax returns on Forms

7

1040, 1040A and 1040EZ from the Liberty Tax offices in Newberry, South Carolina and Broad River Road, South Carolina to the IRS . . ., all in violation of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 2 (aiding and abetting wire fraud), 18 U.S.C. § 1962(c) (RICO) and 18 U.S.C. § 1962(d) (RICO conspiracy)." Compl. ¶ 93.

To prevail in a RICO claim brought under § 1962(c), a plaintiff must satisfy the following elements: "(1) the defendant's employment by or association with (2) an 'enterprise' (3) engaged in or affecting interstate commerce (4) the affairs of which the defendant conducts or participates in through a pattern of racketeering activity." Dtex, LLC v. BBVA Bancomer, S.A., 405 F. Supp. 2d 639, 649 (D.S.C. 2005). "The enterprise must be distinct from the persons alleged to have violated § 1962(c)."[1] Palmetto State Med. Ctr., Inc. v. Operation Lifeline, 117 F.3d 142, 148 (4th Cir. 1997). Subsection (d) prohibits conspiracies to violate subsection (c). "To state a claim for RICO conspiracy pursuant to § 1962(d), [plaintiffs] must allege that there was (1) an agreement to further or facilitate (2) an act that is independently wrongful under RICO." Myers v. Lee, No. 10-131, 2010 WL 3745632, at *6 (E.D. Va. Sept. 21, 2010) (citing Beck v. Prupis, 529 U.S. 494, 505 (2000)).

### 1. Pattern of Racketeering Activity

Defendants first contend that plaintiffs have failed to show that the Hewitts participated in the enterprise through a pattern of racketeering activity.

RICO defines "racketeering activity" in part as any act that is indictable under certain provisions of federal law, including the law prohibiting wire fraud. 18 U.S.C. § 1961(1)(B) (citing 18 U.S.C. § 1343). Under the wire fraud statute, it is an offense for anyone to scheme to defraud someone else out of money or property by making false and

---
[1] In this case, the "enterprise" is alleged to be Liberty Tax. Compl. ¶¶ 19(b), 89.

8

fraudulent representations and then to attempt to execute or carry out the scheme through the use of interstate wire communications.  28 U.S.C. § 1343.  The elements of wire fraud are "(1) a scheme disclosing an intent to defraud; (2) the use, respectively, of the mails or interstate wires in furtherance of the scheme."  Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004).

A "pattern of racketeering activity" requires at least two acts of "racketeering activity" committed within ten years of one another.  18 U.S.C. § 1961(5).  "[A] plaintiff must allege a continuing pattern and a relationship among the defendant's activities showing they had the same or similar purposes."  Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 505 (4th Cir. 1998) (citing H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229 (1989)).  "Continuity may be established by showing that 'predicate acts or offenses are part of an ongoing entity's regular way of doing business.'"  Id. (quoting Nw. Bell Tel. Co., 492 U.S. at 242).

Plaintiffs rely on the October 22, 2010 statement of Annie Fuller as evidence of racketeering activity, but as pointed out by defendants, Fuller recanted many of the allegations of wrongdoing made in her statement during her deposition.  Defs.' Mem. Supp. Mot. Summ. J. 10; see, e.g., Fuller Dep. 103:12-16 ("Q: Are you aware of any training by Liberty Tax employees . . . that was focused on maximizing revenue by preparing false and fraudulent tax returns, 1040, 1040A, 1040EZ?  A: No."); id. at 104:15-20 ("Q: Are you aware of any false filing of returns?  A: No.  Q: False reporting of returns?  A: No.").  Nevertheless, plaintiffs set forth other evidence that they contend establishes that the Hewitts engaged in a pattern of racketeering activity.

For example, plaintiffs propound the testimony of Trisha Grabert.[2] In her affidavit, Grabert states that beginning in 2007, she owned four Liberty Tax franchises until being terminated last year. Grabert Aff. ¶¶ 4-6. She avers she was trained by Annie Fuller to increase her average net fee for tax returns by using unnecessary forms that contained false or inflated data solicited from the customer. Id. ¶¶ 9, 17. According to Grabert, the method of soliciting false information from low income clients was called "digging deep." Id. ¶ 19. In her deposition, Grabert testified she was "taught to probe the customer and let them make . . . up" false or inflated data to be entered into the Liberty Tax computer system, Grabert Dep. 137:13-14; that she "purposely solicited [customers] to answer questions knowing that it is likely false," id. at 147:25-148:1; that Liberty Tax privately advocated in the training sessions that preparers submit returns they knew were fraudulent, id. at 158:15-23; that she would sometimes "use every worksheet because it adds more form charges," id. at 169:16-18; and that it is "one hundred percent correct" that the phrase "digging deep" meant "to ask and seek improper information as opposed to being a due diligent tax preparer," id. at 241:1-9. There is some (but by no means abundant) evidence to support Grabert's assertions. Compare Pls.' Resp. Opp. Defs.' Mot. Summ. J. Ex. 5 (December 2008 email from John Hewitt to Annie Fuller stating that Fuller should "[f]ollow my instructions"), with Grabert Dep. 46:19-22 (stating that John Hewitt would teach illegal tax preparation methods "through a third

---

[2] Grabert was terminated by Liberty Tax on April 20, 2012. Defs.' Reply Supp. Mot. Summ. J. Ex. C. She provided an affidavit on June 13, 2012, two days before defendants filed their motion for summary judgment. The affidavit was not provided to defendants until July 9, 2012, as an attachment to plaintiffs' reply brief in support of their motion for class certification. Grabert was deposed, with leave of court, on August 1, 2012.

party"); id. 76:10-16 (stating "John Hewitt watched [Fuller] do the speaking and training for him" and Fuller was "under the direction of John Hewitt to do this training").

Viewed in the light most favorable to plaintiffs, there are genuine issues of material fact as to whether John Hewitt conducted or participated in a pattern of racketeering activity. If believed, Grabert's testimony would create an inference that John Hewitt spearheaded or at least sanctioned a scheme to electronically file thousands of fraudulent tax returns, which would satisfy the "pattern of racketeering activity" requirement. See Ill. Dep't of Rev. v. Phillips, 771 F.2d 312, 316-17 (7th Cir. 1985) (holding that government stated a claim for civil RICO for repeated mailing of false tax returns, a mail fraud violation). However, plaintiffs have produced no evidence to sufficiently implicate Danny Hewitt in the alleged fraudulent scheme. In fact, Grabert admitted in her deposition that Danny Hewitt was not involved in any training regarding tax preparation issues. See Grabert Dep. 33:1-14 (stating that Danny Hewitt did not teach Grabert "anything about how to prepare tax returns"); see also Mathias Dep. 34:3-9 (stating that he had never had a training session with Danny Hewitt where he discussed preparation of tax returns because "[h]e's more marketing"). Therefore, summary judgment is warranted in favor of Danny Hewitt on plaintiffs' RICO claims.[3]

### 2. Causation

The Hewitts additionally argue that plaintiffs have failed to meet RICO's causation requirement.

---

[3] The court grants summary judgment to Danny Hewitt on plaintiffs' claims brought under 18 U.S.C. §§ 1982(c) and (d). See GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 551 n.2 (4th Cir. 2001) (holding that when a substantive RICO claim brought under § 1962(c) fails, the § 1962(d) "RICO conspiracy claim fails as well").

11

Although RICO is a criminal statute, it provides a civil remedy for private plaintiffs. See 18 U.S.C. § 1964(c). Section 1964(c) provides,

> Any person injured in his business or property *by reason of* a violation of section 1962 . . . may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Id. (emphasis added). The Supreme Court has framed this causation requirement as one of standing. See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."); Sadighi v. Daghighfekr, 36 F. Supp. 2d 279, 286 (D.S.C. 1999).

To have standing to bring a private cause of action under RICO, "the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" Hemi Group, LLC v. City of New York, N.Y., 130 S. Ct. 983, 989 (2010) (quoting Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268 (1992)). To meet the causation requirement with respect to wire fraud, a plaintiff must show that he detrimentally relied in some way on the fraudulent wire and that the wire was the proximate cause of the alleged injury to his business or property. Trigon, 367 F.3d at 233 (citing Chisolm v. TranSouth Fin. Corp., 95 F.3d 331, 337 (4th Cir. 1996)).

The Hewitts contend that plaintiffs cannot establish causation because there is no evidence that the named plaintiffs were exposed, directly or indirectly, to any of the unlawful tax preparation methods allegedly conducted by John Hewitt, Danny Hewitt, or Annie Fuller. Defs.' Reply Supp. Mot. Summ. J. 3-4. Plaintiffs counter that "[e]ach of [the] Plaintiffs had their tax returns prepared by a Liberty Tax trained preparer working

for a franchise owned by Annie Fuller or her business partner Chris Hanyes." Pls.' Resp. Opp. Defs.' Mot. Summ. J. 16.

There is some evidence that the scheme allegedly sanctioned by John Hewitt and taught by Annie Fuller was put in action in South Carolina. For example, the Martins had their tax returns prepared at the Newberry, South Carolina Liberty Tax franchise owned and operated by Annie Fuller. See Kenneth Martin Dep. 14:15-18 (stating that his return was prepared in Newberry by a preparer whom he believed to be Annie Fuller's mother). From this, it could be inferred that the audits experienced by the plaintiffs occurred as a result of the alleged illegal tax preparation scheme. See id. at 56:7-16 (statement by Kenneth Martin that he was audited by the South Carolina Department of Revenue as a result of the tax preparation at the Newberry franchise). The court finds that plaintiffs have established genuine issues of fact on the causation element for trial. See Peckham v. Continental Cas. Ins. Co., 895 F.2d 830, 837 (1st Cir. 1990) (causation questions are "normally grist for the jury's mill"); First Am. Corp. v. Al-Nahyan, 17 F. Supp. 2d 10, 23 (D.D.C. 1998) (holding that causation question on RICO claims must go to the jury).

For the above reasons, the court grants summary judgment to Danny Hewitt on plaintiffs' RICO claims but denies summary judgment to John Hewitt on these claims.[4]

---

[4] Defendants take issue with a legal theory asserted in plaintiffs' motion for class certification that is absent from their complaint. Plaintiffs have adopted a new and additional theory that defendants' alleged scheme of charging for tax returns on a per-form basis amounts to a "contingency fee" that violates Treasury Department Circular 230. This theory is irrelevant to the instant motion for summary judgment as it does not from a basis of the RICO claims asserted against the Hewitts.

In support of this contingency fee theory, plaintiffs offer the expert testimony of Mary Rae Fouts, who opines that plaintiffs' fee formula is dependent upon the results obtained from a tax return and is therefore a prohibited contingency fee under Circular 230. Defendants have filed a motion to exclude the expert report and deposition testimony of Ms. Fouts. This motion was filed to exclude the report and testimony "from consideration as part of the Plaintiffs' Motion for Class Certification." Defs.' Mem. Supp. Mot. Exclude 1. The court has already ruled on the

### B.  UNJUST ENRICHMENT

Plaintiffs also bring causes of action against John and Denny Hewitt for unjust enrichment, alleging that plaintiffs "have conferred a financial benefit upon LIBERTY TAX, JOHN HEWITT, and DANNY HEWITT as a result of their paying for tax preparation services for which LIBERTY TAX receives royalties and commissions on tax refund anticipation loans and passes income to its principal shareholders JOHN HEWITT and DANNY HEWITT."  Compl. ¶ 108.

In South Carolina, to recover for unjust enrichment the plaintiff must show "(1) that he conferred a non-gratuitous benefit on the defendant; (2) that the defendant realized some value from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value."  Sauner v. Public Serv. Auth. of S.C., 581 S.E.2d 161, 167 (S.C. 2003).

The Hewitts contend that plaintiffs cannot satisfy the first element—that plaintiffs conferred a benefit on them.  Instead, the Hewitts argue that any benefit they received must have come from Liberty Tax.  Liberty Tax receives royalties and marketing fees from franchises based upon the franchises' gross revenues, and also receives commission income on refund anticipation loans made by third party banks.  See Fuller Statement, Oct. 22, 2010, at 95 (stating that Liberty Tax receives a total 19 percent royalty from each franchisee's net fees).  The Fourth Circuit has affirmed the dismissal of an unjust enrichment claim when "[a]t most," all plaintiff "can demonstrate [is] that [the defendant corporation], as opposed to [its owner], received a nongratuitous benefit."  Metalmeccanica Del Tiberina v. Kelleher, No. 04-2567, 2005 WL 2901894, at *4 (4th

---

motion for class certification and found that Ms. Fouts' testimony was not critical to resolving that motion.  Therefore, the court will deny the motion to exclude without prejudice with leave for defendants to challenge the admissibility of Ms. Fouts' testimony if this case goes to trial.

Cir. Nov. 4, 2005) (unpublished per curiam opinion) ("Any benefit [the owner] received . . . came from [the corporation]—not [the plaintiff]."); see also Johnson v. Ross, 419 F. App'x 357, 362 (4th Cir. 2011) ("Each of the actions taken by [plaintiffs] benefited [defendant], if at all, only indirectly by virtue of [defendant's] status as a [corporate] shareholder.").

In their response brief, plaintiffs claim that "[a] jury question exists whether Defendants engaged in a pattern of criminal violations for which the Plaintiffs are the victims. If so, Plaintiffs would be entitled to recover their out of pocket losses from the Defendants JOHN HEWITT and DANNY HEWITT through the restitution remedy of unjust enrichment." Pls.' Resp. Opp. Defs.' Mot. Summ. J. 18. This argument wholly ignores the first element of an unjust enrichment claim under South Carolina law—that plaintiffs confer a non-gratuitous benefit on defendants. Plaintiffs have failed to concretely allege or show that they directly conferred any benefit on the individual defendants. Therefore, the court grants summary judgment on the unjust enrichment claims against the Hewitts.

## IV.  CONCLUSION

Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** defendants' motion for summary judgment.

**IT IS FURTHER ORDERED** that this case will be set for jury selection on May 1, 2013.

**AND IT IS SO ORDERED**.

_____

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 27, 2013**
**Charleston, South Carolina**